T. H. WAGNER, Trustee, etc., *v.* CITIZENS' BANK & TRUST
COMPANY.[1]

(*Knoxville.* September Term, 1909.)

1. **BANKRUPTCY.** Act does not enlarge the doctrine of set-off.

The bankruptcy act (Acts of Congress, July 1, 1898, ch. 541, sec.
68a, 30 Stat., 565), providing that "In cases of mutual debts
or mutual credits between the estate of a bankrupt and a
creditor, the account shall be stated, and one debt shall be set
off against the other, and the balance only shall be allowed or
paid," does not enlarge the doctrine of set-off, or enable a party
to have a set-off in cases where the principles of legal or equi-
table set-off did not previously authorize it. (*Post,* p. 173.)

Acts of Congress cited and construed: Act July 1, 1898, ch. 541,
sec. 68a, 30 Stat., 565.

Cases cited and approved: Sawyer v. Hoag, 17 Wall., 610; Bank
v. Massey, 192 U. S., 138.

2. **BANKS AND BANKING.** Relation between bank and its
depositor is that of debtor and creditor.

The general rule is that the relation between a bank and its
depositor is that of debtor and creditor, and the bank is the
debtor of the depositor. (*Post,* p. 174.)

Case cited and approved: Harris v. Bank, 110 Tenn., 249.

3. **SAME.** Same. Bank holds lien on general deposits to secure
depositor's debt.

A bank holds a lien on general deposits to secure the repayment
of the depositor's indebtedness, which lien may be enforced by
applying the debtor's deposits to the debts as they mature.
(*Post,* p. 174.)

---

[1] As to bank's right to apply deposit by fiduciary or represen
tative on his debt to itself, see note to Boyle v. Northwestern Nat.
Bank (Wis.), 1 L. R. A. (N. S.), 1110.

Wagner v. Bank.

4. **SAME.** Bank has no lien on special deposits to secure depositor's debt, when.

A bank has no lien on special deposits, or on moneys deposited for a specific purpose, as for collateral security, or for the payment of a particular debt. (*Post, p.* 174.)

5. **SAME.** Same. Trust deposit cannot be applied to trustee's individual debt.

Where a bank deals with a depositor as trustee, and recognizes funds standing in his name as trust funds, knowing them to be such, it cannot appropriate the same to the payment of the trustee's individual indebtedness to the bank, as there is no right of set-off against a trust deposit, nor any lien for the trustee's personal debts. (*Post, pp.* 174-183.)

Cases cited and approved: State v. Bank, 128 Iowa, 597; Bank v. McCabe, 135 Mich., 479; In re Davis (D. C.), 119 Fed., 950; Wilson v. Dawson, 52 Ind., 515; Lynam v. Bank, 98 Me., 448.

Cases cited and distinguished: Bank v. Massey, 192 U. S., 138; Lowell v. Trust Co., 158 Fed., 781; Clark v. Bank, 160 Mass., 26.

6. **SAME.** Same. Same. Case in judgment.

Where, pursuant to an agreement between an insolvent business corporation and its creditors, funds of the corporation were deposited in a bank, which was a creditor, for *pro rata* distribution among all the creditors, and where the bank, through its president, consented thereto, and the funds were not to be checked out without the counter signature of the representative of the committee of the creditors, the funds were trust funds for a specific purpose, with the consent of the bank, and it had no right of set-off in said fund against the bankrupt corporation's indebtedness to it.

7. **BANKRUPTCY.** Trustee may recover funds deposited for all creditors as against bank's claim of set-off, when.

A trustee in bankruptcy may recover funds deposited in bank by the bankrupt for the benefit of all the creditors, pursuant to an agreement between the creditors, including the bank, even as against the claim of the bank for a set-off against the bankrupt.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. T. M. MCCONNELL, Chancellor.

WHITE & MARTIN and BURKETT, MILLER & MOORE, for complainant.

PRITCHARD & SIZER, for defendant.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainant, as trustee in bankruptcy of the Wilcox Furniture Company, a bankrupt corporation, filed the present bill to recover the sum of $6,110.98 alleged to be due the bankrupt. The bill alleges that at the date of the adjudication of bankruptcy against said Wilcox Furniture Company, and also at the date of the appointment of the complainant as trustee in bankruptcy of said company, there was on deposit in the custody of the Citizens' Bank & Trust Company a fund, amounting to $6,110.98, belonging to said Wilcox Furniture Company, and which fund was a part of its assets. It is alleged that said fund was impressed with the character of a trust fund, and was accumulated under cir-

cumstances which fixed upon defendant Bank & Trust
Company the character of trustee in relation to said
fund.   It is alleged in the bill that said money was ac-
cumulated as the result of an agreement among the
creditors of the said bankrupt, including defendant
bank, to the effect that the assets of the bankrupt should
be collected, and the proceeds deposited in the defend-
ant bank, and distributed *pro rata* among all the cred-
itors.   It is alleged that at the meeting of the creditors
the defendant Citizens' Bank & Trust Company was
represented by its president, G. N. Henson, and he con-
curred in the course then adopted, and agreed to act
with the local creditors in pursuing whatever plan
might be devised, and to share with them *pro rata* in
the division of the proceeds which might be realized
from the sale of the assets of the said Wilcox Furniture
Company.   It is then alleged that, after the appoint-
ment of a temporary receiver in the bankruptcy case,
the defendant "set up a claim to said trust fund then
on deposit in the bank, and claimed the right to set
off, as against said fund, a large amount of indebted-
ness owing to it from the Wilcox Furniture Company."

It is then claimed that, under the facts set forth in
the bill, the defendant is "estopped from appropriating
said funds to its own use, to the exclusion of other
creditors, or from setting up any adverse claim to the
said fund, or from withholding the same from your
complainant."

The defendant bank, in its answer, admitted that on

the date of the adjudication in bankruptcy there was a
balance of $6,110.98 due from it to the bankrupt on
deposit in its bank; but it averred that the bankrupt
was indebted to the defendant by notes in an amount
exceeding said balance, and that said credit balance
in favor of the bankrupt was applied *pro tanto* to the
payment of said notes. The bank denied that it held
any trust fund belonging to the Wilcox Furniture Com-
pany at the time of its adjudication in bankruptcy,
or that it was a trustee of said bankrupt with relation
to any fund. It admitted that it had refused to pay
said credit balance to complainant, and denied the al-
legations of the bill asserting a right in complainant
to recover the same.

Proof was taken, and on the hearing the chancellor
decreed that the deposit account in the defendant bank
was impressed with the character of a trust fund for
the benefit of all the creditors of the Wilcox Furniture
Company, and that defendant bank was estopped from
appropriating the same to its own use, to the exclusion
of the other creditors. He accordingly pronounced a
decree in favor of the complainant and against the de-
fendant bank for the sum of $5,810.98, but declined to
allow any interest on the recovery, and adjudged the
cost against the complainant.

The defendant bank appealed, and has assigned the
following errors:

(1) That the bank is clearly entitled to the right of
set-off claimed in its answer; and

(2)   That the trustee in bankruptcy has no right to enforce the alleged trust in behalf of the creditors, even if one existed.

The material facts necessary to be noticed are that in the spring of 1907 the Wilcox Furniture Company was indebted to various creditors in the sum of about $40,000, and had also become delinquent in the payment of its current bills.  The resident creditors, after securing inventories and examining into the condition of the company, extended to it further time on its past-due indebtedness, receiving from it notes therefor, and during the summer of 1907 the company succeeded in paying to each of the Chattanooga creditors about 25 per cent. of their respective claims.  In the fall of 1907, on account of the financial panic that was then prevailing, the furniture company became still further embarrassed, and about October 1st the local creditors of the concern had another meeting in the city of Chattanooga, and, after conferring with the officers of the company, determined, with their consent, to convert the assets of the furniture company into cash, which should be deposited in the defendant bank, and only so much thereof used as might be necessary to defray current expenses and satisfy the claims of persistent creditors, and the surplus, after the accumulation of sufficient funds, should be divided pro rata among all the creditors, both local and foreign.  A committee of three was appointed to represent the interests of all the creditors, and especially to see that the policy adopted by the

meeting should be faithfully executed.  It was also determined at the said meeting that the committee so selected should appoint a competent bookkeeper, by and with the consent of the Wilcox Furniture Company, who should be placed in the office of that company to represent the interests of the creditors, but who at the same time should be on the pay roll of the furniture company.  It should be stated that the defendant bank, as a creditor of the furniture company, was represented at said meeting by its president.  At a subsequent meeting a rule was adopted, with the consent of the defendant bank, whereby all the checks drawn by the president of the Wilcox Furniture Company against its bank deposit should be countersigned by the representative of the creditors' committee, and without such signature should not be honored by the bank.

The clear weight of the proof is that Mr. G. N. Henson, president of the Citizens' Bank & Trust Company, attended a number of meetings held by the creditors of the Wilcox Furniture Company and definitely agreed to the policy adopted by the committee of husbanding the resources of the furniture company, which should be deposited in the defendant bank, and after a sufficient accumulation the fund should be divided *pro rata* among all the creditors of the furniture company.  We cannot, of course, undertake to detail the testimony establishing this proposition, and can only state our conclusion as to the weight of the testimony from an examination of the record.  We think it undeniable on

this record that the Wilcox Furniture Company was insolvent, at least from the date of the appointment of J. L. Morrison as the representative of the committee, and that this fact was known to the bank.   The fact is the Wilcox Furniture Company was unable to meet its obligations as they matured in the usual course of business during the spring, summer, and fall of 1907. The proof shows that J. L. Morrison, the representative of the creditors' committee, prepared weekly financial reports of the condition of the furniture company, which he submitted to the creditors' committee.   These reports commenced November 21, 1907, and continued down to the close of the week ending January 4, 1908. Mr. Morrison testifies that he kept Mr. Henson advised daily as to the condition of its affairs, and that Mr. Henson approved of the policy of the committee.   The trustee in bankruptcy testified that claims amounting to $33,718.90 had been proven against the bankrupt mercantile corporation.   He further testified that all the assets of the furniture company had been disposed of, and the entire amount that came into his hands was $9,941.02.   It appears that the furniture company was indebted to the defendant bank, when the bankruptcy proceedings were commenced, in the sum of $7,363, and that after the present suit was commenced the defendant bank applied the sum of $6,110.98, standing to the credit of the furniture company on the books of the bank at the close of banking hours on January 17, 1908, to the indebtedness of the Wilcox Furniture

Company, leaving the sum of $1,252.50 as the balance due the bank, which it filed as a claim against the bankrupt. It appears that on January 7, 1908, the cash balance standing to the credit of the Wilcox Furniture Company in the Citizens' Bank & Trust Company was only $217.17. It appears that the receipts from the total sales of the business conducted in the usual manner were not more than sufficient to defray the current expenses. The creditors of the company were becoming impatient, and some were threatening litigation. In this crisis the creditors' committee determined to throw the stock of goods on the market and dispose of them at auction sale. This mode of converting the stock of the company into cash was approved by the creditors, including the defendant bank. Accordingly auction sales were commenced on January 8th, and were continued from day to day until January 11th, when certain nonresident creditors of the Wilcox Furniture Company filed a petition of involuntary bankruptcy against it. At this date there was on deposit in the defendant bank the sum of $4,761.25, which had been accumulated as the result of the first three days of the auction sale. Application was made to the trustee in bankruptcy to allow the sales to continue, and under an arrangement with the trustee the sales were continued for two or three days after the petition in bankruptcy was filed. The sum of $2,301.72 was realized from the auction sales after the petition in bankruptcy was filed. We find from the proof that the fund which

the bank is now seeking to set off against the indebtedness due it from the furniture company was accumulated as the result of the auction sales, and that it was understood by the defendant bank that this fund was being deposited with it as a special fund for *pro rata* distribution among all the creditors of the Wilcox Furniture Company.

The defendant bank bases its right to a set-off on section 68a of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat., 565 [U. S. Comp. St. 1901, p. 3450]), as follows:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

In the case of *New York, etc., Bank* v. *Massey*, 192 U. S., 138, 24 Sup. Ct., 199, 48 L. Ed., 380, the supreme court of the United States, in dealing with the clause just mentioned, says:

"Section 68a of the bankruptcy act of 1898 is almost a literal reproduction of section 20 of the act of 1867."

In *Sawyer* v. *Hoag*, 17 Wall., 610, 21 L. Ed., 731, in construing section 20 of the act of 1867 (Act March 2, 1867, 14 Stat., 526, c. 176), the court said as follows:

"This section was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases where the principles of legal or equitable set-off did not previously authorize it."

The general rule is that the relation of the bank to the depositor is that of debtor and creditor, and the bank is the debtor of the depositor. *Harris* v. *Bank*, 110 Tenn., 249, 75 S. W., 1053.

"The bank holds a lien on the deposits in its hands to secure the repayment of the depositor's indebtedness, and may enforce that lien as the debts mature by applying the debtor's deposits upon them, thus setting the two off against each other." 3 Am. and Eng. Ency. of Law (2d Ed.), p. 835.

It is also stated:

"The right of the bank to apply deposits to the extinguishment of the depositor's indebtedness as it matures grows out of the doctrine that relationship between the bank and the depositor is that of debtor and creditor." 3 Am. and Eng. Ency. of Law (2d Ed.), p. 835.

But it is well settled that a bank does not have "a lien upon special .deposits or monies deposited for a specific purpose, as for collateral security or for the payment of a particular debt." 3 Am. and Eng. Ency. of Law · (2d Ed.), p. 837, and cases cited.

Again it is said:

"The proposition that there is no right of set-off against a trust deposit, nor any lien for the trustee's personal debts, is axiomatic." 3 Am. and Eng. Ency. of Law (2d Ed.), p. 837, and cases cited.

In *State* v. *Corning State Sav. Bank*, 128 Iowa, 597, 105 N. W., 159, it is said:

"Where a bank, which was a creditor of an insolvent estate, received a deposit of funds from the receiver, it could not apply such funds on its claims, nor plead such claims as an offset against the deposit."

In *State Bank* v. *McCabe,* 135 Mich., 479, 98 N. W., 20, it is said:

"Where the bank deals with a depositor as trustee, and recognizes funds standing in his name as trust funds, knowing them to be such, it cannot appropriate them to the payment of the trustee's individual indebtedness to the bank."

This question arose in *Re Davis* (D. C.), 119 Fed., 950, wherein an insolvent partnership sold its stock of goods, and, by its direction, the purchaser deposited its price in the bank, taking a receipt therefor, showing that the money was to be prorated among the several creditors of the firm as their interests might appear. Subsequently, on petition of creditors, the partnership was adjudicated an involuntary bankrupt. After said adjudication, the bank undertook to apply the money so deposited on certain notes of the firm held by it and another creditor, without the consent of the depositor or the bankrupt, and to refuse the demands of the trustee therefor. Held, that the bank held the deposit in a fiduciary capacity as a trust fund, which precluded it from asserting an adverse claim thereto after the bankruptcy as against the trustee.

Among other things, the court said:

"Upon the merits of the controversy, would the bank

be in position to successfully contest the right of the trustee to the money? Its ability to do so would depend upon its right to apply the fund to its own use. While a general deposit by a merchant of money in a bank creates the relation of debtor and creditor, and authorizes the bank to use the money as its own, such result does not obtain when the deposit is made for a special purpose, as, for example, to be paid to creditors, as was the case here."

In *Wilson* v. *Dawson*, 52 Ind., 515, it was said:

"It is a general rule that funds deposited in bank for a special purpose, known to the bank, cannot be withheld from that purpose, to the end that they may be set off by the bank against a debt due to it from the depositor."

In *Lynam* v. *National Bank*, 98 Me., 448, 57 Atl., 799, it appeared that:

"In June, 1902, the Standard Granite Company sent to each of its creditors, including the Belfast National Bank, a circular letter stating that it was unable to meet its obligations. A few days later in the same month it called a meeting of its creditors, at which meeting the Belfast National Bank was represented by one of its directors. At this meeting a committee of three creditors was appointed, with instructions to secure, if possible, the discharge of certain attachments which had been placed upon the property of the granite company. On September 4th following, the directors

Wagner v. Bank.

of the granite company passed a resolution, admitting the inability of the company to pay its debts, and its willingness to be adjudged a bankrupt on that ground. On the day following the granite company sent to the Belfast National Bank a deposit of $800. At that time the granite company had a balance of $1.04 standing to its credit on the books of the Belfast National Bank. The intention of the Standard Granite Company in making this deposit of $800 was that it should be held by the bank until a trustee in bankruptcy for the granite company should be appointed; but no notice of such intention was given to the bank, and the deposit was credited to the account of the granite company and added to the balance of $1.04 then standing on the books of the company.

"At the time this deposit was made the granite company was indebted to the bank to the amount of several thousand dollars. On the day following the making of this deposit of $800, a petition in bankruptcy was filed against the granite company, and it was duly adjudged a bankrupt, and one Lynam was appointed and qualified as its trustee in bankruptcy. Said trustee made a demand on the bank for the $800, which demand was refused; the bank claiming that it would offset the deposit on the past-due notes of the granite company.

"For some time past, all the efforts of the granite company . . . and that of its creditors had been to obtain a distribution of its assets equitably, and to that end the first attempt was to discharge the attach-

ments. Honest dealing on the part of the granite com-
pany, which is to be presumed, required that all of its
assets should be husbanded for the benefit of all of its
creditors. Pending the effort to obtain an assignment
or adjudication of bankruptcy, it had $800 in money,
which it intended to retain, and ought to retain, as part
of its general assets. As some time would elapse be-
fore it could be thus administered, it was deposited in
the bank, really for safe-keeping. All these facts were
well known to the bank when it received the deposit.
It knew it was not intended as a payment, and did not
treat it as such. The bank could not fail to under-
stand that it was intended that this money should be
added to the other assets for the general benefit as it
equitably ought to be. It certainly understood that the
granite company, under the then existing circumstances,
would not voluntarily subject this portion of its assets
to a set-off by the bank, to the injury of other creditors.

"Upon consideration of all the circumstances, and
the situation of the parties, we think it a fair inference
that the bank understood that the deposit was intended
only for safe-keeping, to be ultimately appropriated
for the benefit of all the creditors of the granite com-
pany, and that in fact it was a deposit in trust for that
purpose. And it being charged with such trust, the
plaintiff, as trustee in bankruptcy, is entitled to re-
cover."

We are of opinion that these authorities are appli-
cable in the present instance. It distinctly appears

on this record that the funds accumulated in the defendant bank were deposited for a special purpose, with the knowledge and consent of the president of the bank; that the funds could not be checked out by the president of the furniture company without the signature of J. L. Morrison, representative of the creditors' committee. The fund thereby became a trust deposit for specific purposes, with the knowledge and consent of the bank, and the latter had no right of set-off in said fund against the bankrupt's indebtedness to the bank.

Counsel for the bank relies on several cases as announcing a contrary doctrine, namely, *New York County Bank* v. *Massey,* 192 U. S., 138, 24 Sup. Ct., 199, 48 L. Ed., 380; *Clark v. Northampton Nat. Bank,* 160 Mass., 26, 35 N. E., 108; *Lowell* v. *International Trust Co.,* 158 Fed., 781, 86 C. C. A., 137.

In *Bank* v. *Massey,* supra, the court said:

"It cannot be doubted that, except under special circumstances, or where there is a statute to the contrary, a deposit of money upon general account with a bank creates the relation of debtor and creditor. The money deposited becomes part of the general funds of the bank, to be dealt with by it as other moneys, to be loaned to customers and parted with at the will of the bank, and the right of the depositor is to have this debt repaid in whole or in part by honoring checks drawn against the deposits. It creates an ordinary debt, not a privilege or right of a fiduciary character."

But in that case the facts did not show a deposit for a special purpose, with the knowledge and consent of the bank, but only a deposit in the ordinary course of business. In such a case the authorities are uniform that the bank has the right to set off its notes against the deposits.

In *Clark* v. *Northampton National Bank,* supra, the case seems to have turned on a finding of fact by the lower court. The court said as follows:

"The amount of the notes is to be set off against the balance due on account of the deposits at the time of the commencement of the proceedings in bankruptcy, unless the deposits made after March 8, 1892, are to be construed as made with a view to give a preference or to effect a fraudulent transfer of property, contrary to the statute relating to insolvency, or as made upon a trust for the creditors. Whether these deposits were made in violation of either section 96 or section 98 of chapter 157 of the Public Statutes was a question of fact, and the court, trying the case without a jury, has found that they were not so made. On the facts found by the court, the rulings on this part of the case were right.

"We are not certain that the exceptions set out all the evidence. Enough, however, is recited to show that the plaintiff had some ground to contend that after March 8th the bank knew that the business of the Florence Tack Company was being carried on with a view of converting its assets into cash for the benefit of

its creditors, and that the company must either effect
a compromise with its creditors or go into insolvency.
The money received after March 8th ought perhaps to
have been specially deposited; but this was not done,
and the account of the tack company with the bank
continued unchanged in form. There is evidence that
the defendant's cashier understood that, after March
8th, checks were to be drawn only to 'pay the help' of
the company; but there is also evidence that checks were
in fact drawn for other purposes and were paid. There
appears to be no doubt that the officers of the bank
knew of the insolvency of the company on March 8th.
Still it is a question of fact whether the transactions
between the company and the bank after March 8th
were had under an implied contract or understanding
on the part of both parties different from that which
existed before. The [lower] court has in effect found
that after March 8th the money continued to be depos-
ited and the checks to be drawn on the same under-
standing as that which existed before that time; that
is, upon the understanding that the relation of the par-
ties continued to be the ordinary one of a depositor
with a bank of discount and deposit. We cannot say,
as a matter of law, that this finding was wrong. It
was for the court below to draw the proper inferences
of fact, and the exceptions disclose no errors of law."

In *Lowell* v. *International Trust Co.,* supra, it was
said:

"Portions of the propositions submitted to us by the

trustee allege that the bankrupt had been insolvent for a considerable time, and that during that period it had been struggling along with its business, with some support from its creditors, and with an understanding between the International Trust Company and some other creditors, by virtue of which all of them, including the International Trust Company, should receive certain *pro rata* benefits out of whatever funds might come from the Thomas & Pike Coal Company. Therefore it is claimed that the funds now sued for are held by the International Trust Company in a *quasi* trust, enforceable by the trustee."

The court held: "A trustee in bankruptcy has no interest, which he can enforce for the benefit of the general creditors, in an arrangement between the bankrupt and certain creditors, by which money deposited with one, which was a bank, was to be held in trust and distributed *pro rata* between them, and which was not prohibited by the bankruptcy statute."

The facts appearing in *Lowell* v. *International Trust Co.* are very different from the facts presented on the present record. There the trustee was seeking to enforce a contract between the bankrupt and certain creditors. In the present instance the fund was accumulated in defendant bank for the benefit of all the creditors, and the bank had become a party to the arrangement. In the present case the trustee clearly has a right to recover a fund which had been deposited by the bankrupt for the benefit of all the creditors.

Wagner v. Bank.

We are therefore of opinion that the bank is es topped, by its conduct and by its agreement with the other creditors, from asserting any right to a set-off against the funds derived from the sales of the stock of the furniture company, and that the decree of the chancellor so holding was correct; and the same is affirmed.