**AMERICAN TRAINING SERVICES, INC.**

v.

**COMMERCE UNION BANK.**

No. 75–183–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

April 6, 1976.

**1102**

Bernstein, Dougherty & Susano, Knoxville, Tenn., Arum, Friedman & Katz, New York City, for plaintiff.

Russell H. Hippe, Jr., Trabue, Sturdivant & DeWitt, Nashville, Tenn., for defendant.

MEMORANDUM

MORTON, District Judge.

This action is presently before the court on the motion of defendant Commerce Union Bank (C.U.B.) for Partial Summary Judgment as to certain sums which it alleges by way of counterclaim to be due and owing from plaintiff, American Training Services, Inc. (A.T.S.).

The plaintiff is a New Jersey corporation engaged in the business of providing vocational training on a contract basis in several fields. The defendant is a Tennessee corporation engaged in banking and financing operations. Jurisdiction is grounded on diversity of citizenship pursuant to 28 U.S.C. § 1332, the amount in controversy exceeding $10,000.

In April of 1973, the parties entered into a written contract (Exhibit A to plaintiff's Complaint) whereby C.U.B. agreed to finance tuition loans for students undertaking a course of study with A.T.S. Both parties had qualified for participation in the Guaranteed Student Loan Program administered by the Office of Education within the Department of Health, Education and Welfare. 45 C.F.R. Part 177. In accordance with that program, C.U.B. remitted the proceeds of each loan made to a student directly to A.T.S. in payment for a student's tuition fee. The contract provided, in accordance with the provisions of the federal Guaranteed Student Loan Program, *supra,* and the National Home Study Council Standards, that upon withdrawal from a course of study by a student, A.T.S. would pay C.U.B. the pro rata portion of the unused tuition fee for application on the student's note with C.U.B. A.T.S. was to furnish C.U.B. with periodic reports of student withdrawals, accompanied by the pro-rated refunds.

This procedure had been followed for several months when A.T.S. began to notice deficiencies in the processing of the loan applications remitted by it to C.U.B. Upon investigation of the problem, A.T.S. concluded that its loan application submittals were being handled improperly by C.U.B. and thereafter filed the present suit, alleg-

ing negligence and breach of contract. Upon the filing of suit, A.T.S. immediately ceased its remittance of withdrawal refund payments to C.U.B., although it continued to furnish the lists necessary to credit withdrawn students with appropriate refunds on their loan obligations to C.U.B.

C.U.B. then counterclaimed against A.T.S. for recovery of the refund payments withheld by the latter, alleging that approximately $475,000.00 was properly due and payable for credit to the student notes [1] under the express terms of the contract. C.U.B. thereafter filed the present motion for Partial Summary Judgment, seeking enforcement of its refund claim,[2] an order directing A.T.S. to pay it all refunds which may hereafter become payable under the contract, and the entry of Final Judgment on this matter pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

A.T.S. resists defendant's motion, arguing that the withdrawals giving rise to the refunds were occasioned by C.U.B.'s negligence in handling the loan applications, that the recovery it seeks against C.U.B. far exceeds the amount of refund payments withheld, and that since there is a dispute over material facts at issue in this case (including the existence of negligence on the part of C.U.B., the causal connection between that alleged negligence and the subsequent student withdrawals, and the exact refund amounts claimed to be due), partial summary judgment is improper.

A.T.S. further maintains that the refund payments are properly the subject of set-off against the amounts claimed to be due it as a result of C.U.B.'s alleged negligence, rejecting the notion that the refunds are in actuality owed to the students rather than the Bank. Indeed, A.T.S. characterizes the students' entitlement to the refunds as a "theory," contending that "in practice" the refunds are paid directly to C.U.B. for application on student notes.

While the last half of plaintiff's characterization of the refund payments is undoubtedly accurate, the allegation that the refunds belong to the students only in theory evinces a serious misapprehension of elementary commercial law. The students, having contracted with A.T.S. for a course of training, and having paid their full tuition by whatever means, are entitled to refund of the unused portion of their tuition fee upon withdrawal. This entitlement is expressly mandated in the Guaranteed Student Loan Program:

> "Each participating institution shall establish a fair and equitable refund policy, under which it shall make a refund of unearned tuition fees . . . *to a student* who receives a loan under this part and who otherwise does not complete the period of study for which the loan was advanced. The institution shall make such policy (including the procedure for obtaining a refund) known in writing to the student prior to his initial acceptance for enrollment [sic] at the institution. . . ." 45 C.F.R. § 177.63(a) (Emphasis added)

The fact that a student to whom the refund is due may have contractually assigned his rights to a lending institution (as was done in the instant case, see Exhibit 1 to defendant's Motion for Partial Summary Judgment) has no bearing whatever on the character of the obligation imposed upon the training institution (in this case, A.T.S.). Quite clearly, the assignee of such a right has every power to enforce it which his assignor had. See 4 *Corbin on Contracts* §§ 870, 877. And the fact that the School and the Bank have contracted between themselves to effectuate the rights granted to the latter by a student-borrower, in no way alters the fact that the legal entitlement to the refund rests initially with the student. It is he who has undertaken the obligation to repay the loan, it is he who has been credited with full payment of his

---

1. As will be discussed below, the student-borrowers executed documents with C.U.B., authorizing tuition refund payments due from A.T.S. to be applied to their tuition loans from the Bank.

2. Apparently amended as a result of the receipt of subsequent student withdrawal reports from A.T.S., the amount prayed for in C.U.B.'s motion was $545,090.70.

tuition fee by the training institution, and it is he *through whom* the refund is legally paid "in practice" to the Bank.

Thus, plaintiff's argument that the refunds are in reality due to C.U.B. is without merit. For though they are, by contractual agreement, *payable* to C.U.B., they are, by operation of law, due and owing to the students. This analysis is supported by the very language employed by the parties in their contract. Paragraph 8 of that agreement provides:

"School shall maintain sufficient reserves to refund the pro rata portion of the money *due to students* who withdraw from courses of study." (Emphasis added)

Inasmuch as any refund payments are legally owed to the students who have withdrawn from their courses with A.T.S., such sums cannot form the basis of a set-off against amounts claimed to be due to A.T.S. by C.U.B. as a result of the latter's alleged negligence or breach of contract. For the refund monies currently being retained by A.T.S. must be considered in essence funds held in trust for the students, while any obligation owed by C.U.B. to A.T.S., aside from being as yet unproven and unliquidated, would be due and owing directly to A.T.S. in its individual capacity.

▆▆▆ The law in Tennessee[3] is settled that ordinarily, one dealing with the funds of another as trustee cannot set off an obligation owed to himself individually against an obligation owed by him as trustee. *Ottarson v. Dobson & Johnson, Inc.,* 52 Tenn.App. 280, 372 S.W.2d 777 (1963); *Wagner v. Citizens Bank & Trust Co.,* 122 Tenn. 164, 122 S.W. 245 (1909). Moreover, the law is equally clear that a claim of set-off must be predicated upon a debt which is certain, or which can be made certain; set-off cannot be allowed for unliquidated damages. *Mack v. Hugger Bros. Const. Co.,* 153 Tenn. 260, 283 S.W. 448 (1926); *Lovejoy v. Ahearn,* 223 Tenn. 562, 448 S.W.2d 420 (1969). Since any recovery which A.T.S. may be entitled to from C.U.B. in the instant case is entirely speculative at this point, set-off of the refund payments against such uncertain sums is improper.

▆▆▆ It should be noted parenthetically that while A.T.S. does not appear to have defended against C.U.B.'s counterclaim on a recoupment theory, under which liquidated damages are not required, *Nashville & Chattanooga R.R. v. Chumley,* 53 Tenn. 325 (Heisk 1871),[4] such a defense would put A.T.S. in no better position. A claim for recoupment must have "sprung immediately from the complainant's claim" and must relate "to cross-demands inseparably connected with and arising out of the transaction on which the suit is grounded." *Mack v. Hugger Bros. Const. Co., supra,* 283 S.W. at 449–50. As suggested in the discussion above, the negligence and breach of contract claims of A.T.S. simply cannot be considered "inseparably connected" with C.U.

---

**3.** This being a diversity of citizenship case, the court is bound by the conflicts of law rules of the state in which it sits—in this case Tennessee. *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The Tennessee conflicts rule provides that "rights and obligations under a contract are governed by the law of that state with the view to which it is made. . . ." *Bowman v. Price,* 143 Tenn. 366, 226 S.W. 210 (1920). The rule further provides that "a contract is presumed to be made with reference to the law of the place where it was entered into . . .." *Deaton v. Vise,* 186 Tenn. 364, 210 S.W.2d 665 (1948). Given the fact, then, that the contract *sub judice* was entered into in Tennessee (see Stipulation of American Training Services, Inc. and Stipulation of Commerce Union Bank, both filed on April 1, 1976), and that its chief objec-

tive (the approval and funding of the loans by C.U.B.) was to be accomplished in Tennessee, that state's substantive laws should control in this case. *See also MacPherson v. MacPherson,* 496 F.2d 258, 261 (6th Cir. 1974); *Moody v. Bass,* 357 F.2d 730, 732 (6th Cir. 1966); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.,* 493 S.W.2d 465 (Tenn.1973).

Moreover, the negligence complained of by plaintiff is alleged to have occurred at C.U.B.'s home offices in Tennessee. Since Tennessee adheres to the doctrine of lex loci delicti, Tennessee law would also control the negligence issues. *See Great American Ins. Co. v. Hartford Acc. & Indem. Co.,* 519 S.W.2d 579 (Tenn. 1975).

**4.** *But see Pettee v. Tennessee Mfg. Co.,* 33 Tenn. 381 (Sneed 1853).

B.'s demand for refund payments, since that demand derives from a wholly distinct obligation of A.T.S. to its students. Whether or not the actual cause of the student withdrawals, and resulting obligation on the part of A.T.S. to pay refunds in their behalf, was occasioned by the neglect of C.U.B., as A.T.S. alleges, is immaterial. The refunds became due and payable upon the withdrawal of a student, for *whatever* reason. Nothing in the regulations promulgated by H.E.W., the contract between the parties, the notes signed by students with C.U.B., or as far as the evidence thus far shows, the contracts between the students and A.T.S., suggests that there are any conditions or qualifications to the obligation of A.T.S. to make prompt refunds whenever students withdraw. The regulations clearly provide that

"Each participating institution shall make each refund which is due under this part within 40 days after the date on which the student's period of enrollment has ended . . .." 45 C.F.R. § 177.-63(d)

Elsewhere the regulations also provide that

"In cases where the student does not matriculate in the institution for an academic period for which he has received a loan under this part, the institution must promptly notify the lender and return the proceeds of the loan to the lender." 45 C.F.R. § 177.46(c)(2)

While the regulation quoted above refers only to students who fail to matriculate, it is indicative of a recognition by H.E.W. that funds advanced to the training institution by a bank are to be promptly returned when the objective of the loan is frustrated. No exceptions to that prompt return appear anywhere in the regulations.

The foregoing discussion makes it clear, then, that A.T.S. has a *legal* obligation to promptly remit the money owed its students to C.U.B. for application on their loans with the latter. A close analysis of the particular factual circumstances of this case reveals that immediate release of those funds by A.T.S. is dictated by compelling *equitable* considerations as well. As the

situation now stands, interest is continuing to accrue on the student loans affected by this suit. Though C.U.B. has apparently attempted to negotiate an interim accommodation with H.E.W. which would allow normal repayment of the student loans without jeopardizing the Bank's position, such efforts have as yet been unsuccessful. (See exhibits accompanying Affidavits in Further Support of Motion for Entry of Final Judgment, filed December 18, 1975). A.T.S. suggests that the proper method for dealing with the situation is to compel C.U.B. to credit the student loan accounts with the refund amounts despite the fact that A.T.S. has withheld the payment of them and has given C.U.B. absolutely no assurances that it (C.U.B.) will ever receive those funds other than by way of set-off against what is presently a totally speculative recovery. The equities of the situation dictate that as between two parties, one of whom owes a present, liquidated debt while the other is subject merely to the possibility of a future, unliquidated obligation, the former should be taxed with the disputed burden.

If indeed C.U.B. is later found to be liable to A.T.S. as a result of its alleged negligence or breach of contract, appropriate remedies can be fashioned at that time to afford A.T.S. whatever recovery the circumstances merit, including interest. There is no suggestion in the record that C.U.B.'s solvency or continuing ability to satisfy a judgment, if rendered, is in doubt.

In short, the instant controversy should not be permitted to adversely affect the rights of innocent third parties (in this case, the student-borrowers) if appropriate means of avoiding the detriment can be devised. In this case, ordering payment of the refund monies by A.T.S. is a readily available solution which is consistent with both legal and equitable considerations.

The difficulties that arose between A.T.S. and C.U.B. in this case were not entirely unforeseeable. Both were astute business entities and were undoubtedly aware that any commercial arrangement of this nature was subject to certain problems. It would

have been a simple matter for A.T.S., had it wished to assure itself protection from the situation in which it now finds itself, to have insisted upon a specific right of set-off, without prejudice to the students, of refund obligations against claimed improprieties on the part of C.U.B. That such remedies were contemplated by the parties is amply borne out by Paragraph 15 of their contract, wherein C.U.B. expressly reserved certain set-off rights against A.T.S.[5]

The only matter left to resolve is A.T.S.'s claim that since a material matter (the exact amount due as refund payments) is in dispute, partial summary judgment pursuant to Federal Rule 56 is unwarranted. This argument must be rejected on two grounds.

First, Rule 56(c) specifically provides that "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

■ Thus, even if the court were to accept A.T.S.'s contention that there is a genuine dispute as to the amount due in refund payments, summary judgment as to the obligation of A.T.S. to make those payments would be proper, subject to a subsequent hearing for the purpose of determining the exact amounts due.

The second flaw in A.T.S.'s reasoning is its characterization of the uncertainty as to refund amounts due under the contract as a "dispute." For while the precise amount owed by A.T.S. as refunds for student withdrawals has not as yet been determined with precision, there is no "dispute" as to the amounts due in the sense that one party claims "X" dollars are owed while the other maintains that in fact "Y" dollars are owed.

Hence there exists merely an *uncertainty* as to what is due in refund payments by A.T.S., rather than any dispute. The only genuine dispute is whether A.T.S. can properly set-off those amounts against its claims for recovery from C.U.B., and that issue is one of *law* which this court has already disposed of.

The uncertainty of the precise amount of refund payments due can be easily remedied by recourse to the identical methods that were employed by the parties prior to the suspension of payments by A.T.S. The reports of student withdrawals regularly remitted to C.U.B. by A.T.S., which indicate the refund amounts due each student, should collectively provide the best evidence of the precise total amounts payable to C.U.B. A.T.S. has indicated that it has continued to remit these reports to C.U.B.,[6] while retaining the actual payments that it had previously remitted with the reports. Therefore, absent some dispute by C.U.B. as to the accuracy of said reports,[7] A.T.S. will be required to pay over to C.U.B. the entire amounts reflected on all reports submitted to the latter from the date upon which it commenced the withholding of payments to the Bank up to the date of the accompanying Order. Thereafter, A.T.S. will be required to remit to C.U.B. regular reports of student withdrawals and refund amounts due for each, and to accompany said reports with actual payments corresponding to the amounts indicated on the reports, as was its customary practice prior to the institution of this suit.

The court is of the opinion that, particularly in light of the interests of the student-borrowers in this case as pointed out previously, there exists no just reason for delay

---

5. It is of considerable interest to note that the particular type of set-off rights reserved by C.U.B.—the application of funds on deposit against sums claimed to be due under A.T.S.'s contractual "buy back" responsibilities—would not have been possible under Tennessee law absent the express contractual provision to that effect. *See Wagner v. Citizens' Bank & Trust Co.*, 122 Tenn. 164, 122 S.W. 245 (1909)

6. *See* plaintiff's Answer to Counterclaim, filed on August 29, 1975, at p. 2.

7. While such a dispute would constitute a genuine issue as to a material fact, thus necessitating further proceedings to resolve the matter of damages in accordance with Rule 56(c), the court does not anticipate any objections on the part of C.U.B. inasmuch as the figure prayed for in its motion for partial summary judgment was apparently computed from the reports remitted to it by A.T.S.

in the entry of judgment pursuant to C.U. B.'s motion. Therefore, in accordance with Rule 54(b) of the Federal Rules, the court will include in the Order accompanying this Memorandum, an express direction for the entry of judgment on C.U.B.'s motion and will certify that it has made a determination that there is no just reason for delaying said entry.