ALBERT H. LYNAM, Trustee in Bankruptcy,

*vs.*

BELFAST NATIONAL BANK.

Hancock.     Opinion February 27, 1904.

*Bank,*—Insolvent depositor.   *Set-Off,* not allowed.   Special deposit in trust.
*Bankruptcy,* Title of Trustee and rights of recovery.
*Bankruptcy Act, 1898,* §§ *60, 70, (e).*

When a bank receives from a customer a deposit intended only for safe keeping to be ultimately appropriated for the benefit of all his creditors and who was known by it to be insolvent and the deposit was made in trust for that purpose, *held;* that the fund is not subject to a set-off by the bank against the depositor's account, and that the fund belongs to the depositor's trustee in bankruptcy.

The Standard Granite Company became pecuniarily embarrassed, and was insolvent on June 10, 1902.   It sent to the defendant bank on that day a circular stating that it could not meet its obligations, that its property was under attachment and a keeper in possession.   On June 20, 1902, a meeting of its creditors was called for June 25, and was then held, at which the bank was represented.   The company there stated its hope to pay twenty per cent.   A committee was then chosen to procure a discharge of the attachments, if possible, and to arrange for a common law assignment, and, failing in that, to commence bankruptcy proceedings.

Since June 20, the Granite Company has ceased to be a going concern, and all its efforts and that of the creditors had been to obtain an equal distribution of its assets.   Pending these efforts it had eight hundred dollars in cash, which it deposited in defendant bank, to which it was largely indebted, but did not intend it as payment to the bank, and "did intend that it should be held for its trustee in bankruptcy when appointed," though no notice of this intention was given to the bank.

September 20, 1902, the Granite Company was decreed bankrupt, and plaintiff is its trustee.

*Held;* that all the circumstances satisfactorily show that this deposit was really in trust for the creditors, and that the bank had such knowledge and participation in the transaction as to render it chargeable as trustee of the fund for the creditors generally, and cannot set off its debt of the Granite Company against it; and that the plaintiff, as trustee in bankruptcy, of the Granite Company, is entitled to the fund and can recover it in this action.

Agreed statement.    Judgment for plaintiff.

Assumpsit by the trustee in bankruptcy of the Standard Granite Company against the Belfast National Bank to recover a deposit of $800 made in the bank on Sept. 6, 1902, after the Granite Company had become insolvent.    Date of writ, August 4, 1903.

The declaration contained a count on account annexed, a count for money had and received and also the following special count:

"Also for that the Standard Granite Company at Mount Desert, to wit, said Ellsworth, on September 6, 1902, was insolvent, and had prior thereto committed an act of bankruptcy, and being insolvent on said date made a transfer of certain of its property, to wit, the sum of eight hundred dollars, in money to the defendant corporation; and within four months after such transfer, to wit, on September 6th, 1902, a petition in bankruptcy was filed against said Standard Granite Company, in the United States District Court, for the District of Maine, and on September 20th, 1902, the said Standard Granite Company, was by said Court adjudicated a bankrupt upon said petition, and on November 5th, 1902, the plaintiff, A. H. Lynam, was duly and legally elected, appointed and qualified as trustee in bankruptcy of said Standard Granite Company.    And the plaintiff alleges that the effect of said transfer of property to the defendant corporation, will be to enable the defendant corporation one of the creditors of said Standard Granite Company, to obtain a greater percentage of its debts than any other such creditors of the same class.

"And the plaintiff avers that such transfer of property by the said Standard Granite Company to the defendant corporation, was a preference under the bankruptcy law of the United States; that such preference was given within four months before the filing of said peti-

tion in bankruptcy, and that the person receiving it, and to be bene-
fited thereby, to wit, the defendant corporation, and its agents acting
therein, then and there had reasonable cause to believe that it was
intended thereby to give a preference."

Plea, general issue with brief statement and set-off against this
claim of past-due indebtedness of the Standard Granite Company
amounting to $3,224.65.

#### AGREED STATEMENT OF FACTS.

This action is brought to recover the sum of eight hundred dollars
deposited by the Standard Granite Company in the defendant bank
on September 6th, 1902. No part of said eight hundred dollars has
been drawn by or paid to the said corporation, or its trustee in bank-
ruptcy, but the defendant bank pleads in set-off an indebtedness by
the Standard Granite Company to itself, amounting to $3,224.65.

On June 12, 1902, the Standard Granite Company, being then
insolvent, sent to the defendant bank a copy of a circular letter to its
creditors. This circular letter, dated June 12, 1902, is annexed
hereto, and marked "Exhibit 1."

On June 20, 1902, the Standard Granite Company called a meet-
ing of its creditors to be held on June 25, 1902, at the office of A.
W. King, Esquire, in Ellsworth. A copy of the circular letter call-
ing this meeting is annexed hereto, and marked "Exhibit 2." A
copy of this letter was sent to and received by the defendant bank
prior to June 25, 1902.

On June 25, 1902, a meeting of the creditors of the Standard
Granite Company was held at the office of A. W. King, Esquire, in
Ellsworth, at which meeting the defendant bank was represented by
William B. Swan, Esquire, one of its directors. At this meeting
Cyrus J. Hall, president of the Standard Granite Company, presented
a statement showing the insolvency of said corporation, and stating
that he hoped and expected to be able to offer the creditors twenty
per cent of their claim in settlement. He also stated (and this was
true in fact) that the property of the Standard Granite Company was
then under attachment in suits brought by two or three of its cred-
itors. At this meeting a committee of three of the creditors was

appointed who were instructed by the meeting to secure, if possible, a discharge of said attachments and to arrange for a common law assignment to be made. Failing in this, a committee were instructed to have bankruptcy proceedings begun.

On September 4, 1902, the directors of the Standard Granite Company passed the following vote, namely: "Voted that the corporation admit in writing to its creditors its inability to pay its debts, and its willingness to be adjudged a bankrupt on that ground, under the bankruptcy laws of the United States, and that the treasurer be instructed to give notice of this action to the various creditors of the company."

On September 5, 1902, the Standard Granite Company sent to the defendant bank a deposit of eight hundred dollars accompanied by a letter of that date, marked "Exhibit 3." This letter and deposit were received by the defendant bank on September 6, 1902. Prior to that time no deposit had been made by the Standard Granite Company in the defendant bank, and no check drawn by said Standard Granite Company on the defendant bank since April, 1902. There was a balance of one dollar and four cents which had been standing in the defendant bank to the credit of the Standard Granite Company since April, 1902.

If material and admissible, it is admitted that the Standard Granite Company in making such deposit did not intend it as a payment on its obligations to the defendant bank, but did intend that it should be held for its trustee in bankruptcy when appointed. No notice of any intention, however, was given to the defendant bank, except as appears by "Exhibit 3," and the deposit was credited to the account of the Standard Granite Company, and added to the balance of one dollar and four cents then standing on the books of the bank.

At the time said deposit was made, to wit, September 6, 1902, the defendant bank held the notes described in the account in set-off, and there is still due upon said notes to the defendant bank the sum of $3,224.65.

On September 12, 1902, the Standard Granite Company sent to

the defendant bank the circular letter marked "Exhibit 4" which was duly received by the defendant.

On September 6, 1902, a petition in bankruptcy was filed against the Standard Granite Company in the United States District Court for the District of Maine, and on September 20, 1902, said Standard Granite Company was, by said court, adjudged a bankrupt upon said petition.

On November 5, 1902, the plaintiff, A. H. Lynam, was duly and legally appointed and qualified as trustee in bankruptcy, of said Standard Granite Company.

On December 22, 1902, the plaintiff, as such trustee, forwarded to the defendant bank a certified copy of his appointment, and demanded payment of said sum of eight hundred dollars. This demand was refused by the defendant bank, who notified the plaintiff that it should claim an offset on its overdue notes.

The assets of said Standard Granite Company, not including said $800 deposit, amount to $2,133.14.

The liabilities of the same class, not including preferred or fully secured claims, amount to $40,000.

EXHIBIT 1.

C. J. Hall, Pres.                                    Telegraph Address.
C. G. Ferguson, Treas.              .              Ellsworth, Maine.
                                                   Forward by Telephone.

THE STANDARD GRANITE COMPANY.

HALL QUARRY, Maine, June 12, 1902.

BELFAST NATIONAL BANK.
Belfast, Me.

Dear Sirs :—

Replying to your favors;

We are sorry to inform you that the Standard Granite Company is unable to meet its obligations. We are preparing a statement of the company's financial condition, and shall then confer with the creditors, regarding the best course to be taken by the company. One attachment, with keeper, has been placed on the property which preserves all interests.

We hope that some satisfactory arrangement can be made with the creditors and trust that none of them will commence any other suits, because will only add expense and costs, thereby reducing their interests by so much.

Yours truly,

The Standard Granite Co., ·

C. J. HALL, Pres.

EXHIBIT 2.

C. J. Hall, Pres.                          Telegraph Address.

C. G. Ferguson, Treas.                     Ellsworth, Maine.

Forward by Telephone.

THE STANDARD GRANITE COMPANY.

HALL QUARRY, Maine, June 20th, 1902.

BELFAST NATIONAL BANK.

Belfast, Maine.

Gentlemen:—

In accordance with its circular letter of June 12th The Standard Granite Company hereby gives notice that a meeting of its creditors will be holden at the office of Arno W. King, Esq., at Ellsworth, Maine, on Wednesday, the 25th inst. at 2 o'clock p. m., and you are invited and requested to be present.

The Standard Granite Co.,

C. J. HALL, Pres.

EXHIBIT 3.

C. J. Hall, Pres.                          Telegraph Address.

C. G. Ferguson, Treas.                     Ellsworth, Maine.

Forward by Telephone.

THE STANDARD GRANITE COMPANY.

HALL QUARRY, Maine, Sept. 5, 1902.

BELFAST NATIONAL BANK.

Belfast, Maine.

Gentlemen:—

Enclosed find deposit credit S. G. Co. $800.00.

Yours truly,

The Standard Granite Co.,

By C. J. FERGUSON.

EXHIBIT 4.

C. J. Hall, Pres.                                    Telegraph Address.
C. G. Ferguson, Treas.                        Ellsworth, Maine.
                                                            Forward by Telephone.

## THE STANDARD GRANITE COMPANY.

HALL QUARRY, Maine, Sept. 12, 1902.

At a meeting of the Directors of the Standard Granite Company held on the fourth day of September 1902. It was voted that this corporation admit it in writing to its creditors its inability to pay its debts, and its willingness to be adjudged bankrupt on that ground under the law of the United States.

C. G. FERGUSON,
Treasurer of The Standard Granite Co.

*L. B. Deasy and A. H. Lynam,* for plaintiff.

Counsel argued in part:

What are all the possible intentions that the Standard Granite Company could have entertained in making the deposit? What are all the possible intentions that the bank could have attributed to the depositor?

1:—It might have intended the deposit to use in carrying on its business. But, it had no business to carry on. Its property was under attachment. An officer was in possession. It was hopelessly insolvent, and through the action of the creditors, including this defendant, an assignment for the benefit of creditors, or the prosecution of bankruptcy proceedings, was certain and imminent. The defendant bank knew of these things when it received the deposit. It certainly had no reasonable cause to believe that the deposit was intended by the Standard Granite Co. to be used in carrying on its business.

2:—An individual similarly circumstanced might have intended the deposit as a basis for post bankruptcy prosperity. Not so a corporation. A corporation is dissolved by bankruptcy proceedings against it. It can have no success, no career and no existence after bankruptcy.

3:—The corporate officers, in whose minds the corporate intent had its origin and existence, might have intended to abstract the deposit, to steal it, and use it for their own purposes. But, this money having been deposited in the name of the corporation, such an intent certainly cannot be presumed.

4:—The bank may have reasonable cause to believe the truth, to wit, that the deposit was intended to be held for the trustee in bankruptcy, in which case the plaintiff is entitled to recover under the count for money had and received.

5:—The defendant may have had reasonable cause to believe that the deposit was intended for the special benefit of the Belfast National Bank, in which case the plaintiff is entitled to recover by reason of positive provisions of the Bankruptcy Law. *Toof* v. *Martin,* 13 Wallace, 49; *Lampkin* v. *Peoples Nat. Bank,* (Mo.) 71 S. W. R. 715; *Pierik* v. *Havens & Geddes Co.,* 110 Fed. Rep. 133; *Harmon* v. *Walker,* (Mich.) 91 N. W. R. 1025; *Sherman* v. *Luckhardt,* (Kan.) 70 Pacific R. 702; *In re Myers,* 99 Fed. Rep. 691; *In re Eggert,* 98 Fed. Rep. 843.

*R. F. Dunton,* for defendant.

Deposit not a preference under sect. 60 of the bankrupt act. It is not a "transfer" under that section. It is admitted that the company did not intend it as a payment, and it was not a "pledge, mortgage, gift or security." Defendant's provable debt is the balance due on the notes held by it after allowing the deposit in offset. Brandenburg, 2nd ed. p. 675.

"The general rule of set-off applies between a banker and his customers, so that in case of mutual debts and credits, whether matured or not, they may be set off by the banker as against the liabilities of a bank depositor." Brandenburg, 2nd ed. p. 679.

"The relation between a banker and a depositor is that of debtor and creditor. Hence, a banker may offset the debt due to him on loans, overdrafts, or otherwise, against deposits which are made with him." Collier, 3rd ed. p. 450, and cases there cited.

"A banker who has for collection drafts of the bankrupt, the pro-

ceeds of which come into his hands after bankruptcy, may offset them against debts due to him." Black, p. 244; Collier, p. 450.

The relation between a bank and its general depositor is that of debtor and creditor. When he deposits moneys with his bank it becomes his debtor to the amount of them. When, therefore, he becomes indebted to the bank, it is a case of mutual debt and mutual credit, which may be well set off against each other. *Libby* v. *Hopkins,* 104 U. S. 308; *In Re Petrie,* 7 N. B. R. 332; *Clark* v. *Northampton Natl. Bank,* 160 Mass. 26.

The fact that the account of the Granite Company with the defendant bank had not been an active account since April previous to the deposit of the $800 can make no difference in this case, for it is admitted that it was not intended as a payment and the bank had no notice of any intention except as appears by the letter accompanying the deposit. Clearly this deposit was not intended as a preference by the depositor nor received as such by the bank. It was the ordinary transaction between depositor and bank.

It was a credit properly made by the bank to the company, and so remained at the time of the adjudication of bankruptcy. It was also a debt due to the company from the bank. The secret intention of the company as to the ultimate disposition of this deposit, is neither material nor admissible. It cannot affect the legal rights of the bank. But even if admissible, the deposit was none the less a debt due the company, and none the less a credit to the company, because the company intended to let it remain such until a trustee in bankruptcy should be appointed. No petition in bankruptcy had been filed against the Granite Company when this deposit was sent to the bank. It might be that no petition would be filed, no adjudication of bankruptcy made, and no trustee appointed.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, POWERS, PEABODY, SPEAR, JJ.

STROUT, J. The plaintiff is the trustee in bankruptcy of the Standard Granite Company. The Granite Company had made with the defendant bank deposits in the ordinary manner, and on Septem-

ber 5, 1902, there was a balance of such deposits standing to the credit of the Granite Company of one dollar and four cents. That balance had been standing since the preceding April. No deposit was made or check drawn after April, till September 5, 1902, when the Granite Company sent to the bank a deposit of eight hundred dollars, accompanied by a letter which stated, "Enclosed find deposit credit S. G. Co. $800." The amount was received by the bank September 6, and as an ordinary deposit, and added to the balance of one dollar and four cents then standing to its credit. At that time the Granite Company was indebted to the bank in a sum exceeding three thousand dollars.

The Granite Company at that date was insolvent, and this fact was known to the bank. September 6, 1902, a petition in bankruptcy was filed against the Granite Company, upon which it was decreed bankrupt on September 20, 1902, and this plaintiff was appointed its trustee on November 5, 1902.

In this suit he claims to recover from the bank the eight hundred dollars deposited on September 6. The bank claims to set off the past-due indebtedness of the Granite Company to it.

It is admitted that the Granite Company in making the deposit, did not intend it as a payment on its obligation to the bank, "but did intend that it should be held for its trustee in bankruptcy when appointed. No notice of any intention, however, was given to the bank." The bank did not apply it in part payment of the indebtedness due.

No fraud was intended or practiced,—and none is claimed. The transaction did not constitute a preference under the bankruptcy laws. This is expressly admitted by counsel for plaintiff. It was not a payment or transfer of property within the meaning of section 60 of the bankruptcy act.

As between the bank and the Granite Company, notwithstanding the intention of the Granite Company that the fund should be held in trust, if that intention was not communicated to the bank, and if the circumstances immediately preceding and attendant upon the transaction were not such as fairly to apprise the bank of the depos-

itor's intention, and thus to charge it as trustee, the bank could set off its claim against that of the Granite Company, and in the absence of fraud, the trustee in bankruptcy has no greater rights against the bank than the Granite Company had. The trustee takes only the title of the bankrupt to his property, and "property transferred by him in fraud of his creditors." By section 70 of the bankrupt act, and under subdivision e, he "may avoid any transfer by the bankrupt of his property which any creditors of such bankrupt might have avoided, and may recover the property so transferred."

Except where otherwise provided in the act, the trustee's rights, in the absence of fraud, are limited to the rights of the bankrupt as they existed before bankruptcy. This principle is thoroughly established by decisions of the Supreme Court of the United States. *Yeatman* v. *New Orleans Savings Institution,* 95 U. S. 764; *Stewart* v. *Platt,* 101 U. S. 731; *Hauselt* v. *Harrison,* 105 U. S. 407; *Adams* v. *Collier,* 122 U. S. 390; *Goss* v. *Coffin,* 66 Maine, 432, 22 Am. Rep. 585. These decisions were under the bankrupt act of 1867, but in this respect the existing act does not differ from the earlier one.

But it is strenuously insisted that the fund was held in bank, in trust for the trustee in bankruptcy. That it was so intended by the Granite Company when the deposit was made, is admitted. Are the circumstances such as to charge the bank with knowledge of this intention? The case shows that on June 10, 1902, the Granite Company, then insolvent, sent to the bank a circular, in which it was stated that the company could not meet its obligations, that it was preparing a statement of its financial condition, and would confer with the creditors as to the best course to be taken,—and that an attachment on its property was then existing, and a keeper in possession. On June 20, a meeting of the creditors was called for June 25, at which time it was held. A copy of the call for this meeting was received by the bank prior to June 25. At that meeting the bank was represented by one of its directors. The Granite Company then presented a statement showing its insolvency, and stated its hope to pay twenty per cent of its indebtedness. At this meeting a committee was chosen and instructed, if possible, to procure a discharge

of the attachments, and to arrange for a common law assignment, and, failing in this, to commence bankruptcy proceedings.

Since June 10, the Granite Company had ceased to be a going concern, and all its efforts and that of its creditors had been to obtain a distribution of its assets equitably, and to that end the first attempt was to discharge the attachments. Honest dealing on the part of the Granite Company, which is to be presumed, required that all its assets should be husbanded for the benefit of all of its creditors. Pending the effort to obtain an assignment or adjudication of bankruptcy, it had eight hundred dollars in money which it intended to retain, and ought to retain, as part of its general assets. As some time would elapse before it could be thus administered, it was deposited in the bank really for safe keeping. All these facts were well known to the bank when it received the deposit. It knew it was not intended as a payment, and did not treat it as such. The bank could not fail to understand that it was intended that this money should be added to the other assets for the general benefit, as it equitably ought to be. It certainly understood that the Granite Company, under the then existing circumstances, would not voluntarily subject this portion of its assets to a set-off by the bank, to the injury of other creditors.

Upon consideration of all the circumstances, and the situation of the parties, we think it a fair inference that the bank understood that the deposit was intended only for safe keeping to be ultimately appropriated for the benefit of all the creditors of the Granite Company, and that in fact it was a deposit in trust for that purpose. And it being charged with such trust, the plaintiff, as trustee in bankruptcy, is entitled to recover.

*Judgment for plaintiff for eight hundred dollars,*
*and interest from December 22, 1902, the*
*date of demand.*