### CONTINENTAL NAT. BANK v. MOORE.

(Circuit Court of Appeals, Ninth Circuit. June 2, 1924.)

No. 4207.

1. **Bankruptcy ⬥154—Deposit held a trust fund as to which the bank had no right of set-off.**

Money deposited in escrow by a purchaser of bankrupt's business, to be held until a certain date and then on stated conditions to be paid to the order of bankrupt, on execution of a bill of sale, and which it was understood would be used by bankrupt to effect a composition with his creditors, *held* a trust fund, as to which the bank had no right of set-off, under Bankruptcy Act, § 68a (Comp. St. § 9652).

2. **Banks and banking ⬥134(1)—Right of set-off applies only to money deposited in the usual course of business.**

The right of set-off attaches on money of a customer deposited with a bank in the usual course of business.

3. **Bankruptcy ⬥164—Form of preference immaterial.**

Under Bankruptcy Act, § 1 (25), being Comp. St. § 9585, defining a "transfer" to constitute a preference, it is immaterial in what form a payment to a creditor is made.

4. **Bankruptcy ⬥165(1)—Application by a bank of a deposit to indebtedness of customer held "voidable preference."**

The application by a bank of a deposit not a subject of set-off in payment of an indebtedness to the bank, with full knowledge of the debtor's insolvency and within four months prior to his bankruptcy, *held* a voidable preference.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by William H. Moore, Jr., trustee in bankruptcy of Julius A. Magassin, doing business as the J. A. Magassin Company and as the California Woolen Mills, against the Continental National Bank. Decree for complainant, and defendant appeals. Affirmed.

The bankrupt, a merchant, became financially embrassed. He was indebted to the appellant bank in the sum of $32,950. On June 15, 1921, he went to the officers of the appellant and asked them to look his books over. They went to his store and went through his books. He made an estimate of his stock at $65,000 and his bills receivable at $10,000, and he submitted to the officers of the appellant a list of his liabilities, which were about $19,000. The appellant undertook to help the bankrupt dispose of his business, and finally a purchaser was found at a price of $36,500. The appellant advised the bankrupt to offer his creditors 50 cents on the dollar. It was arranged that the money paid for the business should be held in escrow at the bank until July 20, when a bill of sale was to be given and title was to be passed to the buyer. On July 19 the officers of the bank advised the bankrupt and the purchaser that the sale could not go through, because the escrow provided that, if claims exceeding $30,000 were filed against the escrow, "the sale was off." But on July 20, 1921, the escrow was distributed by the appellant, by drawing cashier's checks, one of which was drawn in favor of the appellant for $32,950; the balance of $1,100 was paid to the bankrupt. Thereafter the Eastern creditors drew on the bankrupt through the appellant bank for the 50 cents on the dollar of their accounts. The bankrupt paid thereon $800, but the bank refused to honor or pay any of the drafts. The petition in bankruptcy was thereupon filed against the bankrupt. The trustee in bankruptcy brought in the court below a suit against the appellant to recover the amount so paid to it as a voidable preference. The appellant in its answer denied that the bank knew or had reasonable cause to believe that the bankrupt was insolvent, or that the payment of the money to it would effect a preference, and it set up other defenses which will be referred to hereafter. Upon the pleadings and the proof the court decreed that the trustee recover from the appellant the sum of $34,315, with interest and costs. From that decree the appeal is taken.

Paul Barksdale D'Orr and A. L. Abrahams, both of Los Angeles, Cal., for appellant.

W. T. Craig and Paul W. Sampsell, both of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The evidence makes it clear and convincing beyond any doubt that the appellant, from and after the time when its officers visited the bankrupt's store and investigated the condition of his business, was fully aware that he was insolvent and that the payment of its claims against him would effect a preference.

[1] But the appellant sets up the defense that the $36,500 so deposited with it was received by it in the ordinary course of banking business, and that on July 20, 1921, there was due and owing from the bankrupt to the appellant $31,000, and that the appellant, as it might lawfully do, set off the bankrupt's indebtedness to it against its indebtedness to the bankrupt, thereby reducing the appellant's indebtedness to the bankrupt to the sum of $5,500. It is sufficient, in answer to this contention, to point to the fact that the $36,500 so held by the bank was not received in the ordinary course of business between the bank and the bankrupt. It was the deposit of a third party, and it

was received in trust. It was deposited with instructions to pay the same to the order of the bankrupt upon receipt by the depositor of the bill of sale of the bankrupt's property, but with the following condition:

"Should attachment suit or bankruptcy proceedings be filed, or claims aggregating more than $36,500 be filed with you against the said J. A. Magassin, prior to July 20, 1921, the foregoing sum of $36,500, if same has been paid to you, is to be returned to me at my option on demand."

[2] The money so deposited and the debt due from the bankrupt to the bank were not in the nature of "mutual credits" and "debts," within the meaning of section 68a of the Bankruptcy Act (Comp. St. § 9652). The right of set-off attaches upon the moneys of a customer deposited with a bank "in the usual course of business for advances which are supposed to be made upon their credit." Michie, Banks and Banking, § 134. As to the fund which represented the proceeds of the bankrupt's business, the relation between the appellant and the bankrupt was not that of banker and depositor, but that of bailee and bailor. The statute of California (Civil Code, § 3054) relied upon by the appellant is but expressive of the law merchant, and does not affect the situation. As to the funds so placed in the control of the bank it is well settled that there was no right of set-off. Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769; Alvord v. Ryan, 212 Fed. 83, 128 C. C. A. 539; Lehigh Valley Coal Sales Co. v. Maguire, 251 Fed. 581, 163 C. C. A. 575; First Nat. Bank v. Harper, 254 Fed. 641, 166 C. C A. 139.

[3, 4] All the elements of a voidable preference are found here. There was a transfer to the appellant of the bankrupt's money. A transfer includes every method of parting with property as a payment. Bankruptcy Act, § 1, subd. 25 (Comp. St. § 9585). In order to make a "transfer," it is immaterial in what form the payment is made, whether by cash, or check, or order. Fox v. Gardner, 21 Wall. 475, 22 L. Ed. 685; Mechanics' Bank v. Ernst, 231 U. S. 60, 34 Sup. Ct. 22, 58 L. Ed. 121; In re The Leader (D. C.) 190 Fed. 624. Here it was accomplished by the appellant's cashier's check. It was done within four months prior to bankruptcy. At the time of the transfer the bankrupt was hopelessly insolvent. The transfer operated as a preference, whereby the bank would be enabled to obtain a greater percentage of its debt than other creditors of the same class would receive. The appellant and its officers, not only had reasonable cause to believe, but they had positive knowledge, that the enforcement of the transfer would effect a preference.

The decree is affirmed.