## UNION BANK & TRUST CO. OF HELENA, MONT., v. LOBLE.

### In re GANS & KLEIN CO.

Circuit Court of Appeals, Ninth Circuit.
May 31, 1927.

Rehearing Denied June 27, 1927.

No. 4967.

**1. Bankruptcy ⊂⇒166(3)—Debtor of bankrupt may not set off counterclaim transferred for such use with knowledge of insolvency (Bankruptcy Act, § 68b [Comp. St. § 9652]).**

Under Bankruptcy Act, § 68b (Comp. St. § 9652), a debtor of a bankrupt may not set off a counterclaim which was transferred to him with a view to such use, and with knowledge or notice that such bankrupt was insolvent or had committed act of bankruptcy.

**2. Bankruptcy ⊂⇒165(1)—Balance of bank account at time of petition in bankruptcy may be set off against bankrupt's debt, in absence of fraud or collusion.**

Balance of a regular bank account at time of filing petition in bankruptcy is a debt due bankrupt from the bank, and in the absence of fraud or collusion between bank and bankrupt with view to creating a preferential transfer, the bank need not surrender such balance, but may set it off against bankrupt's debt to it.

**3. Bankruptcy ⊂⇒154—Bank may be estopped to assert right of set-off of deposit against debt due at time of depositor's bankruptcy.**

A bank may so deal with a depositor as to waive or be estopped to assert the right of set-off of deposit against amount owing it by depositor at time of his bankruptcy, and such right to set-off does not exist, where circumstances are inconsistent with its exercise, or principles of legal or equitable set-off do not authorize it.

**4. Bankruptcy ⊂⇒154—Fund realized from bankrupt's special sale on bank's advice held impressed with trust character after deposit, and not subject to set-off against bankrupt's debt.**

Where bank, with knowledge of bankrupt's failing circumstances, suggested that bankrupt conduct a special sale to raise money to pay certain creditors, with a view to reorganizing and continuing the business, the fund realized on such sale and deposited in the bank *held* impressed with character of trust fund, so as to exempt it from bank's claim to right of set-off against debt owing it from bankrupt.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

In the matter of the bankruptcy of the Gans & Klein Company, in which the Union Bank & Trust Company, of Helena, Mont., presented a claim. From a judgment (14 F.[2d] 116) disallowing the claim on the petition of Lester H. Loble, as trustee, claimant appeals. Affirmed.

Gunn, Rasch & Hall, of Helena, Mont., for appellant.

Wellington D. Rankin and Hugh R. Adair, both of Helena, Mont., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. The appellant bank presented a claim against the estate of Gans & Klein Company, bankrupt, for $3,226.14, the balance due on the bankrupt's note to the bank after offsetting against the same the sum of $8,378.56, the money of the bankrupt on deposit. The trustee filed with the referee a petition for disallowance of the claim, unless the bank should account for and pay to the trustee the sum so applied as set-off. The sole ground of the petition was alleged to be the appellant's knowledge of the bankrupt's insolvency, both at the time of making the deposit and at the time of making the set-off. The answer admitted knowledge of the bankrupt's insolvency at the time of making the set-off, but alleged that the money was a general deposit made in the usual and ordinary course of business. The referee ruled against the appellant's contention. On appeal to the District Court his ruling was affirmed, on the ground that the deposits did not create the relation of debtor and creditor between the depositor and the bank, but were special deposits creating a trust fund, and that the bank, by applying the same as it did, obtained a fraudulent preference. The facts were these:

In the latter part of 1925 the bankrupt was indebted to Eastern merchants in about $21,000, to relatives of its manager in the sum of $35,000, to local creditors in more than $12,000, and to the appellant in $10,000 on a note and "over $1,000" on overdraft. The bankrupt discussed with the president of the bank the question of discontinuing the business, but upon the bank's advice it was finally agreed that a special sale should be conducted by the bankrupt to raise money to pay Eastern creditors, with a view to reorganizing and continuing the business. The special sale was had, and during the months of December and January the bankrupt deposited the proceeds thereof to its account in the bank, subject to check in the same manner as money it had previously deposited. The bank never refused to honor any checks drawn by the bankrupt, and during December and January it paid out thereon, as the court below found, about $4,708, or about one-third of the money realized upon the sale, none of it to pay East-

ern creditors, but principally to pay relatives, local creditors, and current expenses. The Eastern creditors were not informed that the money realized from the sale was to be set apart as a fund for the payment of their claims. The information which they did receive was contained in a circular letter stating that the primary obligations of the business consisted of money loaned by relatives, all unsecured and in no way preferred, a small indebtedness to the bank, likewise not secured, and invoices, that the indebtedness was all on an equal basis, that relatives who had money in the business and the bank were willing to extend their loans "and give us a chance to pay off the invoices and build up the business, and to pay you is our objective, and to do that we are preparing for a big sale. * * * Our other creditors are willing to wait, and we only ask that you give us a reasonable opportunity to get your money for you."

Accepting the relevant facts as found by the referee and affirmed by the District Court, the case here presented is, in brief, one in which the bankrupt, upon consultation with the bank and acting upon its advice, made a special sale of merchandise to raise money for the purpose of paying demands of Eastern creditors, and facilitating the continuation of the bankrupt business, in the expectation of reorganizing the same under an arrangement whereby relatives to whom the bankrupt was indebted were expected to take stock therein.

The appellee, in support of his contention that the purpose of the bank in advising the special sale was to get possession of funds of the bankrupt whereby it might obtain a preference, relies upon the findings of fact made by the referee, and asserts that the same are conclusive on this appeal. All that the referee found was that the bankrupt "was insolvent at the time of such transfer and deposit, and that the bank knew, or had reasonable cause to know, that the effect of taking said money and paying said debt to itself would be that it would receive a greater percentage of the assets of said bankrupt than any other creditor of the same class, and that said bank knew, or had reasonable cause to know, that said bankrupt was insolvent at the time said transfer was made and prior thereto."

Those findings are based solely upon the facts that the bank advised the special sale and did eventually apply upon its demand against the bankrupt the funds which it so held on deposit. There is no evidence tending to show that the bank, in advising the special sale, did so with a view to securing possession of funds whereby to obtain a preference, or that the bankrupt at any time had any intention to give the bank a preference, or to dispose of its property in fraud of other creditors. It is not disputed that in the latter part of December the bank advised the bankrupt to send a letter, "accompanied by a remittance," to each of its Eastern creditors, making known to them the proposed plan of reorganization and the actual condition of its business. This shows that at that time the bank had no intention to accumulate deposits for the purpose of using the same as a set-off. While the money was in its possession on deposit, the bank placed no obstacle in the way of its disbursement to Eastern creditors until early in January, when it became apparent that the suggested plan of reorganization had failed. Thereafter the bankrupt presented to the bank a proposition to compromise with all creditors on the basis of 25 cents on the dollar. The bank denied the bankrupt's right thus to use the money on deposit, and asserted its own claim of lien thereon. On the following day the bankrupt filed its voluntary petition in bankruptcy.

[1, 2] The appellee cites Bailey v. Merrimack Nat. Bank (D. C.) 283 F. 514, in which the court said: "If the natural and probable consequence of making a deposit, as evident to the bank at the time when it is made, will be to give a preferential advantage to the bank, the right of application is lost as to such deposits." That was said in a case in which affairs had reached such a point that both parties to the deposit knew, or were bound to know, that the effect of making it would, in all probability, be to give the bank an advantage through its right of set-off. But there is nothing here to indicate that at the time of making the deposits it was known or expected that the bank would thereby obtain a recoverable preference, and there is no evidence that the understanding between the bankrupt and the bank was not entered into in good faith on the part of both, and with a view to realizing their hope that the bankrupt's business might be reorganized and continued.

Bankruptcy Act, § 68b (Comp. St. § 9652), forbids a debtor of the bankrupt to set off a counterclaim which was transferred to him with a view to such use, and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy. In Continental Trust Co. v. Chi. Title Co., 229 U. S. 435, 444, 33 S. Ct. 829, 832 (57 L. Ed. 1268) the court said: "It is the main purpose of this statute, as its terms show, to prevent debtors of the bankrupt

from acquiring claims against the bankrupt for use by way of set-off and reduction of their indebtedness to the estate." Nor is the right of set-off defeated by the bank's knowledge or notice of the insolvency of the depositor. In re Wright-Dana Hardware Co. (D. C.) 207 F. 636; Studley v. Boylston Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313; Fourth Nat. Bank v. Smith (C. C. A.) 240 F. 19.

The balance of a regular bank account at the time of filing the petition in bankruptcy is a debt due to the bankrupt from the bank, and in the absence of fraud or collusion between the bank and the bankrupt, with the view of creating a preferential transfer, the bank need not surrender such balance; but may set it off against the bankrupt's debt to it. N. Y. County Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380.

In Germania Savings Bank & Trust Co. v. Loeb (C. C. A.) 188 F. 285, 291, it was said: "It is also true that the application upon the bank's debt of this balance of deposits, accumulated after notice of possible insolvency of the mercantile company, in fact enables the bank to obtain a greater dividend on its claim than creditors generally obtained. But, unless it was the intention of the parties to so accumulate deposits for the purpose of preferring the bank, the transaction did not create a preference under the bankrupt act." And in Wilson v. Citizens' Trust Co. (D. C.) 233 F. 697, it was held that the adjudication of bankruptcy within four months after such deposits were made would free the fund from such a trust and give the bank a right to a set-off. Said the court: "The view that it is the making of the deposit, and not the application of the same to the debt of the bank, that constitutes the preference, is borne out by the concluding part of the decision of the Supreme Court of the United States in the case of Mechanics', etc., Bank v. Ernst, 231 U. S. 60 [34 S. Ct. 22, 58 L. Ed. 121]."

In Re Almond-Jones Co. (D. C.) 13 F. (2d) 153, the court said: "The question then arises whether the bank was justified in applying the moneys deposited after it had knowledge of the company's insolvency to the payment of its note. The solution depends upon the purpose with which the deposits were made and accepted—whether they were made in the ordinary course of business, with the expectation and intent that they might be withdrawn at will by the bankrupt, or whether, on the other hand, they were made to build up the account, so that it would be applied to the payment of the bank's claim. * * * In these cases it is laid down that, in the absence of fraud or collusion between the bank and the depositor, with a view of creating a preferential transfer, the bank need not surrender the balance in the bank account at the time of the filing of the depositor's petition in bankruptcy, but may set it off against the depositor's indebtedness and prove his claim for the amount remaining due." We think it clear, therefore, that the bank must be acquitted of the charge of obtaining a fraudulent preference in violation of the bankruptcy law.

[3, 4] But a bank may so deal with a depositor as to waive or be estopped to assert the right of set-off. Michie, Banks and Banking, 1027. And the right does not exist where the circumstances are inconsistent with its exercise. Neponset Bank v. Leland, 5 Metc. (Mass.) 259; Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934. Nor where the principles of legal or equitable set-off do not authorize it. Wagner v. Citizens' Bank & Trust Co., 122 Tenn. 164, 122 S. W. 245, 28 L. R. A. (N. S.) 484, 135 Am. St. Rep. 869, 19 Ann. Cas. 483; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Lynam v. Belfast Nat. Bank, 98 Me. 448, 57 A. 799; In re Davis (D. C.) 119 F. 950. On these grounds we think the decision of the court below is sustainable. While the money realized on the special sale and deposited to the bankrupt's current account and subject to its check for general purposes may not be said to come within the accepted definition of a special deposit so as to be exempt from the bank's claim to the right of set-off, we are inclined to the view that the circumstances under which the fund was created, and the co-operation of the bank and the bankrupt in its creation, were sufficient to so far impress upon it the character of a trust fund that the bank should be held estopped to assert a lien thereon or the right of set-off.

Applicable to the case is the language of the court in Union Trust Co. v. Peck (C. C. A.) 16 F.(2d) 986: "It is, moreover, to be noted that, before and at the time the bank applied these amounts to its own use, it, the bankrupt, and the other creditors were conferring as to the possibility of keeping the bankrupt upon its feet as a going concern by securing the general acceptance of a scheme of reorganization which contemplated the creditors taking less than was due them. Under such circumstances the deposit by the bankrupt of large sums in the bank, which both it and the bankrupt intended should be used for the reduction of the former's debt, were obviously not made in ordi-

nary course, in any fair sense of that phrase. Most men would feel that it is an implied term of such negotiations that during their pendency nobody taking part in them shall do anything to secure preferential rights in or over any assets of the bankrupt which did not belong to it when the conferences began, or upon which it did not then have a prior lien."

The judgment is affirmed.