## INGRAM v. BANK OF COTTAGE GROVE, OR.

Circuit Court of Appeals, Ninth Circuit.
November 5, 1928.

No. 5541.

Wm. B. Layton and N. Ray Alber, both of Portland, Or., for appellant.

Charles A. Hardy, of Eugene, Or., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge. George M. Marksbury, to whom we will refer as the bankrupt, conducted a general merchandise business at Cottage Grove, Or., for some time prior to June 22, 1927. On the latter date he was heavily indebted, and some of his creditors were threatening suit or attachment. He proceeded to Portland, and conferred with his creditors there with a view of obtaining an extension of credit until January 1, 1928. The matter was taken up with the adjustment bureau of the Portland Association of Credit Men, and, after some discussion, it was agreed that a note, secured by chattel mortgage on his stock of merchandise, should be executed by the bankrupt to secure all his creditors, pending an effort to obtain from them an extension of credit until January 1. Pursuant to this arrangement, a mortgage to secure a note in the sum of $14,970.78 was executed and placed of record. Thereupon the adjustment bureau immediately notified all creditors of the action taken by circular letter, setting forth the reasons therefor. At the date of the execu-

tion of the mortgage, the bankrupt was indebted to the Bank of Cottage Grove in the sum of $2,500, but, for some reason, this indebtedness was not included in the mortgage executed by the bankrupt, and the bank received no notice of what had transpired at Portland until about June 28. On the following day it received a copy of the circular letter, and at about the same time an inventory was taken showing the bankrupt to be insolvent, and of this the bank and other creditors were notified on June 29, 1927.

As soon as the bank was advised of the action taken by the creditors at Portland, its president expressed dissatisfaction because the claim of the bank was not included in the original note, and there was some discussion between the president of the bank and the manager of the bureau, resulting in an agreement that the president would proceed to Portland to discuss the situation with the bureau and other creditors. Nothing was done in this regard, however, until July 22, a month after the mortgage was executed. In the meantime, the bankrupt continued in the possession of his business, conducting the same as usual, although he was apparently advised by the adjustment bureau to make no payments upon his old indebtedness to any creditor, lest a preference might ultimately result. From June 22 to July 22 the bankrupt made deposits to the amount of $2,092.60, from his sales, substantially the same as during the previous month. Something over $1,300 of this amount was checked out from time to time, leaving a balance on July 22 of $636.62. On that day the president of the bank proceeded to Portland to meet with the adjustment bureau and a committee of the creditors, but, before leaving Cottage Grove, he directed the cashier to charge off $600 of the above deposit, and apply it on the overdue note of the bankrupt, leaving a balance of $36.62 to the credit of the bankrupt. On July 25 the bankrupt had accumulated a further balance of $153.58, and $150 of this was charged off in the same manner, and applied on the note, leaving a balance of only $3.58 on deposit. After the adjudication in bankruptcy, the bank presented its claim for the balance due on the promissory note, after deducting the credits above referred to, but the trustee objected to the allowance of the claim until the bank returned the amounts charged off and applied on the note. The referee, after finding the facts substantially as above, found that the bank was entitled to charge off the first amount of $600 and apply it on its note, but.

not the second amount, and the decision of the referee was approved by the District Judge. From the latter order, this appeal is prosecuted by the trustee.

From the facts as found by the referee and approved by the District Judge, the deposits in the appellee bank were made by the bankrupt from time to time in the ordinary course of his business, and were checked out by him in the same manner. The deposits were not made for any specific purpose, nor were they subject to a trust of any kind. There was no fraud or collusion between the bankrupt and the bank, and it does not appear that the deposits were made for the purpose of enabling the bank to gain a preference. Under somewhat similar facts in Union Bank & Trust Co. v. Loble (C. C. A.) 20 F.(2d) 124, this court said:

"The balance of a regular bank account at the time of filing the petition in bankruptcy is a debt due to the bankrupt from the bank, and in the absence of fraud or collusion between the bank and the bankrupt, with the view of creating a preferential transfer, the bank need not surrender such balance, but may set it off against the bankrupt's debt to it."

We there quoted with approval from In re Almond-Jones Co. (D. C.) 13 F.(2d) 153, as follows:

"The question then arises whether the bank was justified in applying the moneys deposited after it had knowledge of the company's insolvency to the payment of its note. The solution depends upon the purpose with which the deposits were made and accepted— whether they were made in the ordinary course of business, with the expectation and intent that they might be withdrawn at will by the bankrupt, or whether, on the other hand, they were made to build up the account, so that it would be applied to the payment of the bank's claim. * * * In these cases it is laid down that, in the absence of fraud or collusion between the bank and the depositor, with a view of creating a preferential transfer, the bank need not surrender the balance in the bank account at the time of the filing of the depositor's petition in bankruptcy, but may set it off against the depositor's indebtedness and prove its claim for the amount remaining due."

True, it was held in the Loble Case that the bank waived, or was estopped to assert, its right of set-off, because of an agreement between the bank and the bankrupt that certain moneys derived from a special sale conducted by the bankrupt and placed on deposit in the bank should be paid to certain eastern creditors, but there is no basis for any claim of waiver or estoppel here.

The order is therefore affirmed.