### STEVENS et al. v. BANK OF MANHATTAN TRUST CO.

#### No. 216.

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

Abraham B. Keve, of New York City, for appellants.

Blumberg & Parker, of New York City (Samuel Blumberg, of New York City, of counsel; Samuel M. Chapin and Monroe Chapin, both of New York City, on the brief), for appellee.

Before SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The trustees in bankruptcy of Consolidated Factors Corporation brought suit against the Bank of Manhattan Trust Company to recover certain sums deposited by the bankrupt with the Central National Bank during the month of April, 1930. Since the defendant bank is the successor by merger of the Central National Bank, the facts will be stated hereinafter as if the defendant had been the original party to the transactions involved.

Consolidated Factors Corporation was engaged in the business of commercial factoring. It was adjudicated bankrupt on an involuntary petition filed April 26, 1930. For some months prior thereto the bankrupt had been indebted to the defendant on unsecured notes and had carried a checking account with the defendant. At the close of business on April 24th, the defendant, purporting to exercise the right of set-off, applied the balance of $146,104.45 standing to the credit of the bankrupt's account toward the reduction of its past-due indebtedness on its notes. This suit challenges the defendant's right to retain the sum thus applied. The complaint sets out two causes of action—the first based on the theory that deposits subsequent to April 7th were made with an intent to give a preference to the defendant, as it knew, or had reasonable cause to believe; and the second on the theory that deposits subsequent to April 15th were held upon a constructive trust for the benefit of all its creditors because the defendant and other bank creditors had agreed with the bankrupt on the date last mentioned that its business should be liquidated under the supervision of the banks for the benefit of its creditors. By their complaint the trustees sought to recover deposits aggregating $115,394.95, but their brief upon appeal states that they waive any claim to deposits on or prior to April 15th and now claim only deposits made subsequent thereto. These amount, as found by the court below and as the appellants now concede, to $48,877.74.

The District Court also found that the deposits were made in the regular course of the bankrupt's business and not with a view to giving the defendant a preference, and that when they were received the defendant had neither knowledge that the bankrupt was insolvent nor reasonable cause to believe it to be so. And the court further found, contrary to the trustees' contention, that the deposits were not made at a time when the bankrupt's business was in process of liquidation for the benefit of creditors under the supervision of the defendant and the other banks. These findings resulted in a decision adverse to the complainants on both causes of action. Their appeal challenges the court's findings of fact as well as its conclusions of law. We have therefore felt constrained to examine with care the entire record to determine whether these findings are supported by the evidence.

At the beginning of 1930 the bankrupt was indebted to various banks in amounts aggregating about $2,000,000. Some of its notes were overdue; others about to mature. On January 29th a meeting held at the office of the Equitable Trust Company of New York was attended by the principal officers of the bankrupt and by representatives of its various bank creditors. Upon representations that the bankrupt was solvent by a very large

504

margin but in need of an extension of time, April 15 was agreed upon as a common maturity date for the loans outstanding. New notes were executed accordingly, with provisions for acceleration and for payment of interest monthly. The banks agreed not to take advantage of one another, and that, if set-offs were taken by any bank, they should be prorated among all. This agreement as to prorating set-offs was eventually carried out by the defendant and the other banks. It is not contended, however, that at this meeting they put any restraint upon the bankrupt in the management of its business. Early in April a number of the bankrupt's directors resigned because of the unfavorable financial condition disclosed by the company's report for the year 1929. One of these directors, who was also a director of the defendant, immediately informed the defendant's president of the action he had taken and the reason therefor, and advised that the defendant try to get its money. On April 15, the common maturity date of the bankrupt's loans, representatives of the banks held another meeting to consider what course they should pursue to protect their interests. Mr. Manne, counsel to the company and one of the directors who had resigned, presented a report by a firm of accountants for the year 1929. This showed an impairment of the bankrupt's capital but ample solvency. Mr. Manne stated that, though there might be a further shrinkage of assets, at least $500,000 would be available for distribution to stockholders if the business were discontinued. He expressed the preference that the business should continue. Mr. Proskauer, representing Pelz and Greenstein, the principal officers of the bankrupt, stated that they were ready to resign. He expressed the opinion that the best method of handling the situation was through a private liquidation of the company's assets. Mr. Miller, an employee of the bankrupt, was suggested by Mr. Manne as the person to be put in charge as "liquidator." It was agreed that the bankrupt should employ Leidesdorff & Co., public accountants, to make a thorough and completely independent audit of its books. The banks were to await that audit before taking any action with respect to the bankrupt's notes which had matured on the 15th. Manne testified that "in the meantime the business was to be carried on."

The Leidesdorff audit commenced on April 18, under the supervision of Mr. Fisher. Although no new business or accounts were opened by the bankrupt after that date, apparently it continued to carry out old factoring contracts. The evidence is not sufficient to allow us to upset the finding of the court below that the business was not in process of final liquidation for the benefit of creditors and under the control of the banks. Many checks were drawn on the bankrupt's account with the defendant during the period between April 15 and 24, and all were duly honored and paid. During this period the deposits were some $102,000, the withdrawals some $53,000, leaving the balance of $48,877.74 now in dispute. The only suggestion that the bankrupt's right of withdrawal was restricted in any way is to be found in the provision made for countersignature. The minutes of a meeting of the board of directors of the bankrupt held on April 22 state that "the banks had requested that in the future all checks drawn against the funds of the company * * * be countersigned by a representative designated by S. D. Leidesdorff & Co." A resolution was adopted accordingly naming Mr. Fisher as the designated representative. On and after April 22 all checks were subject to countersignature by him. The evidence as to the manner in which this privilege was exercised shows merely that withdrawals were thereby limited to the payment of legitimate corporate obligations. There is no proof that any restriction was placed upon payments to creditors other than the banks. While it is true that Miller testified that Fisher sought the advice of Mr. Evarts, counsel for the banks, as to "each and every check," this was not corroborated by Fisher and was expressly denied by Evarts. In view of this conflict, we must of course accept the finding of the court below that Mr. Evarts gave the correct version.

The foregoing summary of the evidence is sufficient to show that the court's finding that the bankrupt's deposits were not made with a view to their use as a set-off cannot be reversed by us. It follows without more that the trustees cannot succeed on their first cause of action. See N. Y. County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; Continental & Commercial Trust & Sav. Bank v. Chicago Title & Trust Co., 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268; Ingram v. Bank, 29 F.(2d) 86 (C. C. A. 9); Citizens' Nat. Bank v. Lineberger, 45 F.(2d) 522 (C. C. A. 4). The preference count must fail also for lack of proof of the defendant's knowledge of insolvency. It is true that Mr. Miller testified that about April 22 he told Mr. Connolly, president of the defendant, that the bankrupt was "hopelessly insolvent." But Mr. Connolly ex-

pressly denied that any such statement was made to him. Again, we feel bound by the trial court's acceptance of the defendant's story. The report submitted on April 15th merely showed a substantial impairment of capital. That is, of course, quite different from a condition of insolvency. By joining in the banks' request for an independent audit, the defendant did all it could reasonably be expected to do in the way of inquiry. Not until the audit was presented on the 24th did the defendant become aware of the bankrupt's insolvency. The defendant was entitled under section 68 of the Bankruptcy Act (11 USCA § 108) to use as a set-off the balance of deposits made prior to that date.

■ On the record before us the complainants can fare no better on their second cause of action. The evidence falls far short of proving that on April 15th the banks assumed control of the bankrupt with a view to liquidating its business, or even that they reached an agreement with it upon a program of liquidation for the benefit of themselves or of all the creditors. It may be conceded that, had they done so, they would have lost the privilege of set-off. See Union Bank & Trust Co. v. Loble, 20 F.(2d) 124 (C. C. A. 9); First Nat. Bank v. Sheehy, 29 F.(2d) 400 (C. C. A. 5); Merrimack Nat. Bank v. Bailey, 289 F. 468 (C. C. A. 1). Compare Ingram v. Bank, supra; Citizens' Nat. Bank v. Lineberger, supra. But the trial judge made findings of fact to the contrary, and we find nothing in the record which would justify us in reversing those findings. Prior to April 22d, the banks had merely urged the employment by the bankrupt, as suggested by Mr. Proskauer, of Leidersdorff & Co. to make an independent audit, and the appointment by the bankrupt, as suggested by its counsel, of Mr. Miller to take charge of its business in place of officers who were discredited and ready to resign. It is not shown that the banks had supervision over the auditors or Mr. Miller. They declined to have a representative on the bankrupt's board of directors. They placed no restrictions whatever upon its bank accounts with respect either to deposits or withdrawals. No semblance of control by the banks was proved to exist at any time prior to the defendant's exercise of its privilege of set-off, until the 22d when the bankrupt's directors passed a resolution requiring Mr. Fisher's countersignature on checks. The minutes recite that this resolution was passed at the banks' request. What individual made the request on behalf of the banks does not appear. But, assuming that some representative of the banks did request it, the action was apparently taken to forestall the making by the bankrupt of unauthorized payments such as the $5,000 retainer which Ehrenberg attempted to get, and after the resolution, as well as before, the banks exercised no supervision whatever over the signing of checks. The complainants attempted to prove that they did, but the court expressly rejected this testimony and accepted that of Mr. Evarts to the contrary. Where witnesses are in direct conflict, an appellate court should not reverse the trier's conclusion as to where the truth lies.

Accordingly the decree must be and is affirmed.